### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
----------------------------------x
GAYLE GWOZDZ,                      :
                                   :
            Plaintiff,             :
                                   :
v.                                 :    Civil No. 13cv317 (AWT)
                                   :
GENESIS PHYSICIAN SERVICES         :
d/b/a GENESIS ELDERCARE PHYSICIAN  :
SERVICES, INC.,                    :
                                   :
            Defendant.             :
----------------------------------x
```

### RULING ON MOTION TO DISMISS

The plaintiff, Gayle Gwozdz ("Gwozdz"), brings this action against Genesis Physician Services, d/b/a Genesis Eldercare Physician Services, Inc. ("Genesis") for wrongful termination in violation of federal and state law. The defendant has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts Three and Four of the Complaint[1]. For the reasons set forth below, the motion is being granted in part and denied in part.

### I.  Factual Allegations

"The [amended] complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the

---

[1] The defendant's motion to dismiss was filed subsequent to the filing of the first Amended Complaint. Thus, the court construes the motion to dismiss as being directed at the first Amended Complaint.

following circumstances." <u>Monsky v. Moraghan</u>, 127 F.3d 243, 244 (2d Cir. 1997).

Gwozdz began working for Genesis as an Advanced Practice Registered Nurse ("APRN") at Genesis's Kimberly Hall South Facility ("Kimberly Hall") on December 5, 2011. Gwozdz's immediate supervisor was Leanne Nadeau ("Nadeau"), who was the Clinical Lead Physician Assistant. Two months later, on February 6, 2012, Gwozdz was placed on a Performance Improvement Plan. Thereafter, Gwozdz received a letter stating that her employment was terminated effective February 9, 2012.

Gwozdz alleges that she received inadequate training and resources in order to perform the requirements of her position and that Nadeau did not inform the Kimberly Hall staff about the nature of Gwozdz's role at the facility, which led to significant confusion.

Gwozdz also alleges that in the course of her employment, she advised Nadeau of multiple issues and concerns she had regarding the safe practice of medicine and patient safety at Kimberly Hall, including Gwozdz's suspicion that there was a carpet mold problem at the facility. She also raised her concerns regarding the health, safety and resident care at Kimberly Hall to Nadeau, Florence Bolella (the Director of Nursing Services), Tony Costa (Bolella's supervisor), and Jane Keithly from Genesis's Human Resources Department. In addition,

Gwozdz alleges that she reported the presence of workplace safety or health hazards at Genesis to the Connecticut Department of Labor and to the Board of Examiners for Nursing.

Gwozdz claims that her complaints to her superiors, the Department of Labor, and the Board of Examiners for Nursing were on matters of public concern; that she was engaging in protected conduct; and that Genesis terminated her in retaliation for that protected conduct. In Count Three, Gwozdz claims wrongful termination in violation of Connecticut General Statutes § 31-51q, which protects the free speech of private sector employees who speak out on matters of public concern. In Count Four, Gwozdz claims wrongful termination in violation of Connecticut General Statutes § 31-51m, which protects employees who disclose employer's illegal activities or unethical practices.

## II.  Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly,

550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557 (internal quotation marks omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F.Supp.2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue [on a motion to dismiss] is not whether [the] plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D. Conn. 1990)(citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## III. Discussion

### A.  Count Three: Violation of Conn. Gen. Stat. § 31-51q

Connecticut General Statutes § 31-51q "creates a statutory cause of action for damages against '[a]ny employer' for 'any employee' who has been subjected to 'discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state . . . .'" Schumann v. Dianon Sys., Inc., 304 Conn. 585, 599 (2012)(citing Cotto v. United Tech. Corp., 251 Conn. 1, 6 (1999)). "[T]he protections of § 31-51q . . . extended to employee speech in the private workplace as well." Schumann, 304 Conn. at 599.

Under § 31-51q "the speech must be constitutionally protected." Schumann, 304 Conn. at 600. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006), requires "courts to first determine whether an employee is speaking pursuant to his official duties . . . ." Schumann, 304 Conn. at 604. The inquiry is "a

practical one," Garcetti, 547 U.S. at 424, and entails "consideration of the employee's level of responsibility and the context in which the statements were made." Schumann, 304 Conn. at 614.

In formulating a standard to determine whether a statement is made pursuant to an employee's duties or as a citizen, the Second Circuit articulated the "part-and-parcel" test. In Weintraub v. Bd. of Ed., 593 F.3d 196, 201-02 (2d Cir. 2010), the Second Circuit rejected a school teacher's claim that he was engaging in protected speech as a citizen when he filed a grievance against administrators who had failed to discipline students. The Second Circuit concluded that the grievance was made pursuant to Weintraub's official duties under Garcetti because it was "part-and-parcel of his concerns about his ability to properly execute his duties as a public school teacher . . . ." Id. at 203 (quotation marks and internal citation omitted). In other words, the speech at issue does not merit the protections of the First Amendment if the speech "owed its existence to [the plaintiff's] job duties and was made in furtherance of those duties." Looney v. Black, 702 F.3d 701, 717 (2d Cir. 2012) (citing Ross v. Breslin, 693 F.3d 300, 308 (2d Cir. 2012)).

Genesis argues that because Gwozdz made her complaints as an APRN and the content of her complaints pertained "to patient

care issues or conditions relating to the facility where she
worked," the speech was "part and parcel to her job" under
Schumann and Weintraub. (Def.'s Mem. of Law in Supp. of Def.'s
Mot. to Dismiss, Doc. No. 12, at 8-9.) Gwozdz contends that
Schumann is distinguishable because her complaints to the
Department of Labor and the Board of Examiners for Nursing were
"made outside the chain of command." (Mem. of Law in Supp. of
Pl.'s Obj. to Def.'s Mot. to Dismiss, Doc. No. 20, at 6-7.)

The Amended Complaint alleges that Gwozdz was hired as "an
Advanced Practice Registered Nurse (APRN)." (Am. Compl. ¶ 13.)
The Amended Complaint does not include a description of the job
duties of an APRN, but does allege that on December 5, 2011,
Gwozdz's first day of work at Kimberly Hall, her immediate
supervisor Nadeau provided her with "an extensive list of tasks"
that Gwozdz was expected to accomplish during the first thirty
days of her employment. (Id. ¶ 20.) Also on that day, Gwozdz
"advised Leanne Nadeau of multiple issues and concerns that she
had with regard to the safe practice of medicine and patient
safety at Kimberly Hall South." (Id. ¶ 25.) Thus, the reasonable
inference is that the job duties of an APRN include, at least in
part, the safe practice of medicine and ensuring patient safety
at Kimberly Hall.

The Amended Complaint alleges that Gwozdz reported to the Department of Labor "the presence of workplace safety or health hazards," including:

    a.    Defendant's employees were experiencing upper respiratory problems as a result of possible mold growth and other respiratory irritants;

    b.    the foul smell coming from within and around the employee bathroom in the TCU;

    c.    the foul smell coming from the bathroom adjacent to Marie Brennan's office;

    d.    that [Gwozdz] had previously reported these hazards to Marie Brennan, Leanne Nadeau and Jane Keithly[.]

(Am. Compl. ¶ 59.) The Amended Complaint also alleges that Gwozdz reported to the Board of Examiners for Nursing that Genesis "was providing less than adequate health care services to its patients," including:

    a.    that [Gwozdz] had raised her concerns previously with local and corporate management, and that her concerns have "fallen on deaf ears;"

    b.    information regarding an incident where a [Certified Nursing Assistant] was sleeping in a patient's closet;

    c.    information regarding the training of Registered Nurses by Licensed Practical Nurses;

    d.    information regarding improper infection control policies, acknowledgment of problem and the intent on the part of [Genesis] to keep this information from the regulatory authorities;

    e.    the report included information on medication and transcription errors; and

          f.    information regarding the improper use of medical
                devices and the lack of knowledge concerning
                their proper use.

(Am. Compl. ¶ 60.)

     The court finds unpersuasive the plaintiff's argument that
Schumann is distinguishable because Gwozdz's complaints were
made outside the chain of command. Although the employee in
Schumann did not engage in speech made outside the chain of
command, Schumann cited to Anemone v. Metro. Transp. Auth., 629
F.3d 97, 116 (2d Cir. 2011), as support for the proposition that
statements made outside the chain of command, without more, are
not transformed into protected speech. See Schumann, 304 Conn.
at 617. Thus, the court concludes that Schumann is in accord
with settled law that the type of audience to which an employee
makes complaints is not dispositive on the issue of whether the
speech is protected. See Anemone, 629 F.3d at 116-17 (security
director's statements to outside district attorney about
corruption were not protected by the First Amendment); Ross, 693
F.3d at 302-03, 308 (school district payroll clerk was not
entitled to First Amendment protection for writing letters
containing allegations of financial malfeasance to school board
members, who were outside chain of command).

     The court concludes that Gwozdz's complaints to the
Department of Labor and to the Board of Examiners for Nursing
were part-and-parcel of her concerns about her ability to

                                9

properly execute her duties as an APRN at Kimberly Hall. Thus, based on the factual allegations in the Amended Complaint and drawing reasonable inferences in the plaintiff's favor, Gwozdz made her complaints outside the chain of command pursuant to her official duties as an employee of Genesis and not as a citizen. Her complaints owed their existence to her job duties and were made in furtherance of those duties. The complaints Gwozdz made to the Department of Labor dealt with the plaintiff's own working conditions and those of her co-workers, about which the plaintiff had previously complained to the Human Resources Department. As to the Board of Examiners for Nursing, on January 19, 2012, Nadeau informed the plaintiff, in response to concerns expressed by the plaintiff, that it would be a good thing for the plaintiff, Nadeau, and Bolella to have weekly meetings. The first meeting was held on January 25, 2012. At "[t]his meeting, attended by Leanne Nadeau, Florence Bolella, Tony Costa (Supervisor of Florence Bolella) and Plaintiff, . . . Plaintiff raised multiple issues and problems regarding the health, safety and resident care at Kimberly Hall South . . . ." (Am. Compl. ¶ 48.) The concerns discussed at that meeting included "deficiencies and errors in patient charting, as well as in patient care, medication delivery and administration, and infection control." (Id. ¶ 48(b).) Gwozdz subsequently raised

10

these concerns with the Board of Examiners for Nursing. (See Am. Compl. ¶ 60.)

Accordingly, the plaintiff's speech is not protected for purposes of Connecticut General Statutes § 31-51q, and the motion to dismiss Count Three is being granted.

**B.    Count Four: Violation of Conn. Gen. Stat. § 31-51m**

Connecticut General Statutes § 31-51m, the so-called whistle-blower statute, provides in pertinent part:

> Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may . . . bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later . . . .

Conn. Gen. Stat. § 31-51m(c). The running of the 90-day limitation period may be tolled by the pendency of an administrative proceeding if the administrative remedy sought would provide for "meaningful relief." See Campbell v. Town of Plymouth, 74 Conn. App. 67, 82 (2002). "Meaningful relief" contemplated under § 31-51m(c) includes "reinstatement of [the employee's] previous job, payment of back wages and reestablishment of employee benefits, as well as the possibility of court costs and reasonable attorney's fees." Id. The court in Campbell explained the rationale for tolling under such circumstances:

> Administrative adjudications can provide an opportunity for successful resolution of disputes

without the time and costs associated with litigation.
They also serve to reduce the burden on judicial
resources. It therefore makes sense to toll a statute
of limitation to allow parties to attempt to resolve
their disputes first by administrative means. A valid
administrative remedy, however, must provide for
"meaningful relief," otherwise litigation is merely
postponed.

Campbell, 74 Conn. App. at 82.

Genesis argues that Count Four must be dismissed because
the claim is untimely. Genesis contends that Gwozdz failed to
plead that she brought her whistle-blower claim within the 90-
day limitation period, and that her proceeding before the
Connecticut Commission on Human Rights and Opportunities ("CHRO")
did not toll the limitation period because the CHRO did not have
jurisdiction over her whistle-blower claim. Gwozdz argues that
the whistle-blower claim is timely as a result of the fact that
the 90-day limitation period was tolled because the CHRO could
have provided her "meaningful relief" for purposes of her
whistle-blower claim by means of a final administrative
determination on her gender discrimination claim.

The court finds the defendant's argument unpersuasive. As
an initial matter, Gwozdz alleges that the CHRO granted a
release of jurisdiction on January 10, 2013. (See Am. Compl.
¶ 9.) Gwozdz filed her federal complaint within 90 days, on
March 8, 2013. Therefore, the § 31-51m claim is timely if the

CHRO could have provided the type of administrative remedy contemplated by § 31-51m(c).

On the issue of tolling, Daconto v. Trumbull Hous. Auth., CV 034007847, 2008 WL 442147, *14 (Conn. Super. Ct., Jan. 31, 2008), is directly on point. In Daconto the plaintiff alleged that his termination was motivated by unlawful gender discrimination and in retaliation for his opposition to the defendants' conduct. See id. at *2. The court concluded that the plaintiff's claim under § 31-51m was timely because the relief the plaintiff sought from the CHRO for employment discrimination included reinstatement of employment, which constituted "meaningful relief" with respect to a claim of wrongful discharge for whistle-blowing under § 31-51m. See id. at *14; cf. Campbell, 74 Conn. App. at 82 (holding that claim filed with the unemployment compensation commission cannot provide reinstatement or continuation of employee benefits and thus is not the type of administrative remedy contemplated by § 31-51m(c)). Similarly, here because the relief available from the CHRO upon a determination of discrimination includes "the hiring or reinstatement of employees, with or without back pay," Conn. Gen. Stat. § 46a-86(b), and the relief under § 31-51m includes "the reinstatement of [the employee's] previous job, payment of back wages," Conn. Gen. Stat. § 31-51m(c), the plaintiff's CHRO proceeding could have provided for "meaningful relief."

The cases relied upon by Genesis are inapposite. Those cases considered a different issue, namely whether a plaintiff is required to exhaust remedies with the CHRO before proceeding with a § 31-51m cause of action, and the parties appear to be in agreement that a plaintiff is not required to do so. See Kulmann v. Yale-New Haven Hosp., No. NNHCV106010414, 2012 WL 234218, *4 (Conn. Super. Ct. Jan. 4, 2012) (denying motion to dismiss § 31-51m claim for failure to exhaust administrative remedies where plaintiff did not allege that her firing was based upon any of the types of discrimination within the jurisdiction of the CHRO, but rather that she was retaliated against for reporting to the Department of Public Health issues relating to the health and safety of patients in defendant's care); Santacapita v. Bd. of Ed., No. CV094028116S, 2011 WL 3930268, *8 (Conn. Super. Ct. Aug. 9, 2011) (where plaintiff's action was not predicated on any alleged discriminatory practices by defendant but rather was based on retaliation for filing a report of child abuse, filing a complaint with the CHRO was not an available administrative remedy plaintiff must exhaust before bringing a § 31-51m claim because the CHRO did not have jurisdiction over such retaliatory conduct); Benevides v. Roundhouse, LLC, No. HHDCV094045477, 2010 WL 1508288, *2-3 (Conn. Super. Ct. Mar. 8, 2010) (where plaintiff's retaliation claim was based on her reporting defendant's illegal conduct to the Department of Labor,

14

plaintiff was not obligated to file a complaint with the CHRO regarding her § 31-51m claim because the CHRO did not provide an administrative remedy for whistle-blower claims based on the improper classification of an employee by an employer as an independent contractor).

Thus, because the CHRO's jurisdiction is limited solely to claims in which an employer is alleged to have engaged in a discriminatory employment practice, exhaustion of administrative remedies before the CHRO is not a prerequisite for bringing a wrongful discharge claim for whistle-blowing pursuant to § 31-51m. However, where a plaintiff brings a § 31-51m whistle-blower claim in combination with a discriminatory employment practice claim that is within the jurisdiction of the CHRO, the limitation period under § 31-51m is tolled during the pendency of the CHRO proceeding because the plaintiff could obtain "meaningful relief" from the CHRO; this is because the fact that the plaintiff could obtain "meaningful relief" from the CHRO makes the CHRO's final determination a "final administrative determination" under § 31-51m(c). But there appears to be no limitation on the right of a plaintiff to proceed simultaneously with a lawsuit for wrongful discharge for violation of § 31-51m and an administrative proceeding before the CHRO, even though doing so would not serve to reduce the burden on judicial resources.

Therefore, the motion to dismiss Count Four is being denied.

## IV. Conclusion

Accordingly, for the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 11) is hereby GRANTED in part and DENIED in part. Count Three of the Amended Complaint is dismissed.

It is so ordered.

Signed this 11th day of March 2014 at Hartford, Connecticut.


_____
      /s/ AWT
    Alvin W. Thompson
United States District Judge